UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
DAVID JACOME,                                    :
                                                 :         **REPORT AND**
                                 Plaintiff,      :         **RECOMMENDATION**
                                                 :
                    -against-                    :         1:20-CV-02615 (DG)(PK)
                                                 :
OPTICAL 49, INC., HATZLUCHE OPTICS:
INC. and DOV HOFFMAN,                            :
                                                 :
                                 Defendants.   x
------------------------------------------------------------

**Peggy Kuo, United States Magistrate Judge:**

David Jacome ("Plaintiff") brought this action against Optical 49, Inc. ("Optical 49"),

Hatzluche Optics, Inc. ("Hatzluche," and collectively with Optical 49, the "Corporate Defendants"),

and Dov Hoffman ("Hoffman," and collectively with the Corporate Defendants, "Defendants") for

violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  (*See*

"Am. Compl.," Dkt. 9.)  Plaintiff moved for default judgment against Defendants and for leave to file

a request for attorneys' fees ("Motion," Dkt. 17.)  The Honorable Diane Gujarati referred the Motion

to the undersigned for a report and recommendation.  For the reasons stated herein, the undersigned

respectfully recommends that the Motion be granted.

**BACKGROUND**

I.      **Factual Background**

The following facts are taken from Plaintiff's Amended Complaint, Plaintiff's Declaration in

Support of the Motion ("Jacome Decl.," Dkt. 17-8), Plaintiff's testimony at the Inquest held on April

15, 2021 (*see* Transcript of April 15, 2021 Inquest, "Tr.," Dkt. 21), and a letter from Hoffman notarized

on May 2, 2019.  ("Hoffman Letter," Dkt. 20-1.)

A.      **Plaintiff's Employment with Defendants**

Optical 49 and Hatzluche are New York corporations.  (Am. Compl. ¶¶ 6-7.)  For the period

covered by the Amended Complaint, Hoffman owned, operated, and controlled Optical 49 and Hatzluche.  (*Id.* ¶¶ 8-9, 26; *see also* Jacome Decl. ¶ 5.)

Defendants employed Plaintiff as a salesman from December 24, 2017 through April 9, 2020, when he was terminated.  (Am. Compl. ¶ 21; *see also* Jacome Decl. ¶¶ 3-4, 11; Tr. at 4:20-22; 5:6-11.)[1] When Plaintiff first started working for Defendants, the business was known as Hatzluche Optics,[2] but at some point, Hoffman changed the name to Optical 49.  (Tr. at 7:14-22; 8:6-14.)  Although the Corporate Defendants have different addresses on record with the New York Secretary of State (*see* Am. Compl. ¶¶ 6-7 (identifying 318 Roebling Street, Suite E, Brooklyn, New York 11211 as the address for Optical 49, Inc. and 49 Lee Avenue, Brooklyn, NY 11211 for Hatzluche Optics); *see also* Tr. at 34:16-25)), both operated out of the same location at 49 Lee Avenue in Brooklyn, New York, (Jacome Decl. ¶ 5), and "both of them are one in the same" (Tr. at 7:16-17.)

Hoffman participated in the hiring, supervision, and management of Plaintiff, including setting his hours and determining his method and amount of compensation.  (Am. Compl. ¶¶ 26-27; *see also* Jacome Decl. ¶ 5; Tr. at 5:24-6:7; 9:22-10:1.)

The Amended Complaint alleges that Defendants had gross revenue above $500,000 "at all relevant times."  (Am. Compl. ¶ 40.)  Plaintiff testified at the Inquest that the business's income varied, and "[s]ome days [the store] would make a couple thousand," and on other days it would make "[e]ight hundred to a thousand."  (Tr. at 11:24-12:9.)  Although Plaintiff does not have records of the store's sales, he had personal knowledge of the volume and value of sales because he wrote "cards" for each sale and processed credit card transactions.  (*See id.* at 12:10-13:1.)  Customers paid by credit card

---

[1] The Hoffman Letter states that Plaintiff was Hoffman's employee "[s]ince December 24, 2018."  The discrepancy between the Hoffman Letter and Plaintiff's testimony regarding his start date is resolved in Plaintiff's favor, given that Defendants have not appeared to contest it.

[2] The Hoffman Letter refers to the business as "Hatzlucha Optical," but lists the same business address as the Corporate Defendants.

"[m]aybe as much as 50 percent of the time."  (*Id.* at 30:2-7.)  Plaintiff also testified that, while he

worked for Defendants, the store had only two employees—Plaintiff and Hoffman.[3]  (*Id.* at 11:16-23.)

The Amended Complaint alleges that Defendants were and "continue to be an employer

engaged in interstate commerce and/or the production of goods for commerce."  (Am. Compl. ¶ 38.)

Plaintiff testified that many of Defendants' clients came from out of New York state, including some

from Israel, and that out-of-state clients would come into the store "[v]ery often.  As much as a few

times a week."  (Tr. at 30:11-18.)  Similarly, Defendants shipped frames to out-of-state customers

"[v]ery often."  (*See id.* at 30:19-31:6.)

Plaintiff's job duties included selling glasses, helping customers pick out frames, adjusting

frames, taking patients' pupil distance for fitting glasses, and fixing nose pads.  (*Id.* at 5:6-11.)  Plaintiff's

job also included wrapping and shipping frames to Defendants' out-of-state customers.  He testified

that he "would bring the box to the [local mail] place and they would ship it out either by UPS or [the]

United States Parcel Service."  (*Id.* at 30:24:-31-6.)

### B.    Plaintiff's Hours and Schedule

The Amended Complaint alleges that Plaintiff worked a regular shift from 10:00 a.m. to 6:30

p.m. six days a week, for a fifty-one-hour workweek.  (Am. Compl. ¶ 22.)  In his Declaration, Plaintiff

states that he "worked different schedules," but "[f]rom the beginning of my employment until on or

about April 9, 2020, I worked a regular shift from 10:00 a.m. to 6:30 p.m. six (6) days per week; a fifty-

one (51) hour work week."  (Jacome Decl. ¶ 6.)  At the Inquest, Plaintiff testified consistently regarding

his work hours during the week: "[N]ormally I would get there around 10 o'clock Monday through

Friday and leave around 6:00-6:30, sometimes a little later about 7 o'clock … But my schedule was

---

[3] Plaintiff testified that Hoffman "also hired a doctor, but the doctor was a separate entity.  He hired a doctor through another party and that was separate from the optical himself."  (Tr. at 11:20-22.)

Monday through Saturday … Sundays off."[4]  (Tr. at 6:20-7:4.)

However, Plaintiff testified that he worked shorter hours on the weekend: "Saturdays I would leave … a little earlier" (*id.* at 6:20-7:4), and, more specifically, he would leave "[a]round 1:30, 2 o'clock to the best of my recollection … Sometimes it would fluctuate, but around 1:30, 2 o'clock.  Again, starting around the same time, around 10 o'clock."  (*Id.* at 10:8-11.)

Plaintiff testified that he worked Monday through Saturday every week, except for days off on Christmas, New Year's, Hanukkah, and Purim.  (*Id.* at 10:12-16, 11:1-13.)  He also testified that he was only sick "[m]aybe once or twice" and never took a vacation.  (*Id.* at 13:6-11.)

C.     **Plaintiff's Wages**

From the beginning of his employment on December 24, 2017, until his termination on April 9, 2020, Plaintiff was paid a gross amount of $200 per week.  (Jacome Decl. ¶¶ 3, 7, 11; *see* Hoffman Letter ("David Jacome makes a set rate of 400$ every 2 weeks…"); Tr. at 6:8-9, 9:10-13.)  Defendants never paid Plaintiff an overtime rate.  (Am. Compl. ¶¶ 14, 24, 29, 31, 59-60; Jacome Decl. ¶ 8.)  Although Defendants agreed to pay Plaintiff 20% commission on frames sold (Hoffman Letter ("David Jacome makes … 20% commission on all frames sold off the books")), Plaintiff was never paid any commissions.  (Tr. at 9:7-9, 17:16-18, 18:6-19:9.)

D.     **Defendants' Recordkeeping**

Defendants did not use a timekeeping device at the workplace to track Plaintiff's work hours and did not maintain accurate time records, timesheets, or payroll records.  (Am. Compl. ¶¶ 25, 32, 35, 49.)  Defendants never provided Plaintiff with any wage notice upon hiring or afterward, or any wage statements or pay stubs along with his weekly earnings.  (Am. Compl. ¶¶ 33, 67-68, 71-72; *see also* Jacome Decl. ¶¶ 9-10; Tr. at 8:15-9:6.)

---

[4] The Hoffman Letter states that Plaintiff's "hours are from 10am to 6:30pm Monday-Sunday.  Saturday's off." (Dkt. 20-1.)  The undersigned does not find it consequential whether Plaintiff's day off was Saturday or Sunday.

## II.     Procedural Background

Plaintiff filed the Complaint on June 11, 2020 and the Amended Complaint on September 23, 2020. (Dkts. 1, 9.)  Plaintiff served a Summons and copy of the Amended Complaint on Optical 49 and Hatzluche via the New York Secretary of State.  (Dkts. 12, 13, 17-4, 17-5.)  Plaintiff served a Summons and copy of the Amended Complaint on Hoffman by mailing a copy to Hoffman's place of business, and by hand delivering a copy at Hoffman's actual place of business to Harry Libeman, identified by Plaintiff's process server as "Co-worker."  (Dkt. 14, Dkt. 17-6.)

After Defendants did not answer or otherwise respond to the Amended Complaint, Plaintiff requested a certificate of default, and the Clerk of Court entered default against Defendants on November 23, 2020.  (Dkts. 15, 16.)  Plaintiff then filed the Motion.  (Dkt. 17.)

Plaintiff's Counsel's Declaration of Service filed with the Motion stated that Hoffman had been served at 49 Lee Avenue, Brooklyn, New York, 11211.  (*See* Dkt. 17-10.)  Because that is a business address, Plaintiff was directed to mail a copy of the Motion to Hoffman's last known residential address, in compliance with Local Civ. R. 55.2(c).  (Order dated Mar. 31, 2021.)  Plaintiff filed a supplemental declaration of service of the Motion for Default Judgment on Hoffman on April 8, 2021, indicating that the Motion was sent to four addresses, including Hoffman's last known residential address.  (Dkts. 18, 19.)

The Court held an Inquest by telephone on April 15, 2021, at which Plaintiff testified.  (Tr.)  Thereafter, Plaintiff filed the Hoffman Letter on April 16, 2021.  (Dkt. 20.)

### DISCUSSION

## I.     Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  The plaintiff may then move the court for

an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A plaintiff must take several steps before the court will grant default judgment. The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted). The plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations,

citations, and alterations omitted)).  "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the recordkeeping requirements] of the [FLSA]." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established…." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.    Jurisdiction

### A.    Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### B.    Service on the Defendants

Plaintiff properly served Optical 49, Inc. by delivering and leaving a copy of the Summons and Amended Complaint with the New York Secretary of State.  *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B).  (Dkt. 13, Dkt. 17-4.)

Plaintiff properly served Hatzluche Optics, Inc. by delivering and leaving a copy of the Summons and Amended Complaint with the New York Secretary of State.  *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B).  (Dkt. 12, Dkt. 17-5.)

Plaintiff properly served Hoffman by delivering a copy of the Summons and Amended Complaint to a person of suitable age at Hoffman's actual place of business and then mailing a copy to his business.  N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e).  (Dkt. 14, Dkt. 17-6.)  Service on all three Defendants was therefore proper.

### C.      Personal Jurisdiction

"[S]erving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).)

New York has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  Because Optical 49 and Hatzluche are New York corporations operating within New York and were properly served with the Summons and Amended Complaint, the Court has personal jurisdiction over them.

New York has general jurisdiction over its residents.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016).  Hoffman's last known place of residence is in Brooklyn, New York. (*See* Dkt. 18.)  The state also has specific jurisdiction over individuals who 'transact any business within the state' so long as 'the cause of action arises from that transaction.'"  *Francis*, 2018 WL 4292171 at *3 (quoting *Licci ex rel. Licci*, 673 F.3d at 60.  Hoffman is the "owner, officer, director and/or managing agent of" the Corporate Defendants, both of which transact business in New York.  (Am. Compl. ¶¶ 6-9.)  The Court therefore has personal jurisdiction over Hoffman.

### III.    Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiffs filed the following documents in support of the Motion: Notice of Motion (Dkt. 17); Memorandum of Law in Support of Plaintiffs' Motion (Dkt. 17-1), declarations and affidavits in support (Dkt. 17-2, 17-8); the Clerk's Certificate of Default (Dkt. 16, 17-7); the Complaint (Dkt. 1); the Amended Complaint (Dkt.  9); proof of service of the Amended Complaint (Dkt. 17-4, 17-5, 17-6); proof of mailing of the Motion and Motion papers to the defaulting parties (Dkt. 17-10); and the Supplemental Affidavit of Service to Hoffman's last known residential address (Dkt. 18).  By filing

8

these documents, Plaintiff has complied with the requirements of Local Civil Rules 7.1 and 55.2.

## IV.     Liability under the FLSA and NYLL

### A.     Statute of Limitations

The FLSA and the NYLL have different statutes of limitations.  The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).  "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)).  "The statute of limitations starts to run when the employee begins to work for the employer." *Id.* (citation omitted).  Under the NYLL, the statute of limitations is six years.  *See* NYLL §§ 198(3), 663(3).

Plaintiff commenced this action on June 11, 2020.  (*See* Dkt. 1.)  He alleged violations of the FLSA and NYLL beginning with his employment on December 24, 2017 and continuing through April 9, 2020.  (Am. Compl. ¶ 21.)  Plaintiff alleged that Defendants "knowingly and willfully failed to pay" him the minimum wage rate and the overtime wage rate, and his claims were brought within three years.  (Am. Compl. ¶¶ 13-14.)  Therefore, Plaintiff's claims are entirely within the limitations periods of both the FLSA and NYLL.

### B.     Whether Defendants are Joint Employers

Plaintiff argues that Defendants were his joint employers.  (*See* Pl. Mem. Of Law, Dkt. 17-1 at 9-11.)  Courts use two alternative tests to assess whether separate defendants acting in concert may be jointly liable for violations of labor laws: the "single integrated enterprise test;" or the "joint employer test."  *See Galicia v. Ice Cream House on Bedford Ave. LLC*, No. 16-CV-6738 (CBA)(PK), 2017 WL 6733985, at *2 (E.D.N.Y. Oct. 17, 2017), *R&R adopted*, 2017 WL 6759299 (E.D.N.Y. Dec. 29, 2017).

The single integrated enterprise test "assesses whether nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." *Galicia*, 2017 WL 6733985, at *2 (quotation and citation omitted).  Under the single integrated enterprise test, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Apolinar v. R.J. 49 Rest., LLC*, No. 15-CV-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) (quotation and citation omitted).

The joint employer test is "based on the circumstances of the whole [employment] activity … viewed in light of the economic reality." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003) (alteration added, internal citation omitted).  Courts often rely on the four-factor "economic realities" analysis, which "ask[s] whether multiple employers together '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Galicia*, 2017 WL 6733985, at *2 (quoting *Mendez v. Pure Foods Mgmt. Grp., Inc.*, 14-CV-1515 (SRU), 2016 WL 183473, *3 (D. Conn. Jan. 14, 2016)).  Although the economic realities test "has been distilled into a nonexclusive and overlapping set of factors," courts must look "beyond a defendant's formal control over the physical performance of plaintiff's work" and consider the "broad … language in the statute." *See Zheng*, 335 F.3d at 75-76.

Defendants are joint employers under either test.  As to the Corporate Defendants, Plaintiff was an employee of Hatzluche.  (Hoffman Letter.)  Both Hatzluche and Optical 49 operated the same business out of the same location at 49 Lee Avenue in Brooklyn, New York (Jacome Decl. ¶ 5), and both were owned by Defendant Hoffman (Am Compl. ¶¶ 8-9).  At some point, Hoffman changed the name of the business from Hatzluche to Optical 49 (Tr. at 7:14-22; 8:6-14), but "both of them are one in the same" (*Id.* at 7:16-17).

As to Hoffman, Plaintiff alleges that Hoffman owned, operated, and controlled Optical 49 and Hatzluche (Am. Compl. ¶¶ 8-9, 26; *see also* Jacome Decl. ¶ 5), and similarly hired and fired Plaintiff, set his working conditions, and determined how and how much Plaintiff was paid.  (Am. Compl. ¶¶ 26-27; *see also* Jacome Decl. ¶ 5.)  These allegations establish that Defendants were joint employers.

## C.     Whether the FLSA Applies

To plead a cause of action under the FLSA, Plaintiff must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  *See Rowe v. CC Rest. & Bakery, Inc.*, No. 17-CV-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).

### 1.     *Whether Defendants are Employers*

The FLSA broadly describes an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013).  A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage.  *See Rowe*, 2019 WL 4395158, at *4.  The enterprise coverage test considers whether the employer has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015).  "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  Even local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in

interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (*quoting Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)). The individual coverage test considers the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Rowe,* 2019 WL 4395158, at *4.

Plaintiff has not established that the FLSA applies under the enterprise coverage test. The Amended Complaint alleges, in conclusory fashion, that Defendants were engaged in an industry affecting interstate commerce and "[u]pon information and belief, at all relevant times, Defendant[s] has/have had gross revenues in excess of $500,000." (Am. Compl. ¶¶ 38-40.) Plaintiff's Declaration and his testimony at the Inquest established that Defendants operated a small store with two employees open six days per week (*see* Jacome Decl. ¶ 6; Tr. at 11:16-23) with revenue that varied from as low as $800 to "a couple thousand" per day. (*See* Tr. at 11:24-12:9; *see also id.* at 24:7-27:7.) Based on this testimony, the revenue over the course of the approximately 312 days the business was open each year could be as low as $249,600. Plaintiff's conclusory allegations and vague estimates of daily revenue do not establish that Defendants had more than $500,000 in gross annual revenues. *See Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-06304 (MKB)(VMS), 2014 WL 1011070, at *8 (E.D.N.Y. Mar. 14, 2014) (adopting report and recommendation to deny FLSA claim where complaint contained conclusory allegation regarding gross revenue and plaintiff failed to support that allegation at the inquest).

However, Plaintiff has established that he was "engaged in commerce" under the individual coverage test. An employee is "engaged in commerce" if he is "in the 'channels of interstate commerce,' … as distinguished from those who merely affected that commerce." *McLeod v Threlkeld*, 319 U.S. 491, 493-94 (1943) (internal citation omitted). "According to the Department of Labor, individual employees are engaged in commerce 'when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information

and intelligence)' between states." *Klimchak v. Cardrona, Inc.*, No. 09-CV-4311 (MKB)(ARL), 2014 WL 3778964, at *6 (E.D.N.Y. July 31, 2014) (citing 29 C.F.R. § 779.103). "This must be "'a 'substantial part' of the employee's work.'" *Klimchak*, 2014 WL 3778964, at *6 (citing *Boekemeier v. Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000)). Whether qualifying work constitutes a "substantial part" of an employee's job is a fact-specific inquiry. *Berrezueta v. Royal Crown Pastry Shop, Inc.*, No. 12-CV-4380 (RML), 2014 WL 3734489, at *8 (E.D.N.Y. July 28, 2014) (quoting *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009).

A plaintiff responsible for "[s]poradic and occasional shipments of insubstantial amounts of goods" does not qualify. *Boekemeier*, 86 F. Supp. 2d at 287 (citations omitted); *see also Bowrin v. Catholic Guardian Soc.*, 417 F. Supp. 2d 449, 466 (S.D.N.Y. 2006) ("… where an employee's interstate activities are *de minimis*, or not regular or recurring, as a practical matter neither courts nor the [Department of Labor] consider the employee covered under the FLSA.") Instead, the work must be "regular or recurring." *See, e.g.*, *Boekemeier*, 86 F. Supp. 2d at 287-88 (ordering custodial supplies shipped across state lines "between fourteen and thirty" times during the course of seven-year employment was a sufficiently "normal part" of plaintiff's duty to satisfy individual coverage test); *Borwin*, 417 F. Supp. 2d at 466-471 (analyzing each of the seven plaintiffs individually and finding employees who traveled across state lines for work two to four times per month were sufficiently engaged in commerce, while other employees who traveled only a few times a year were not); *Ying Shun Zhao v. Sunny 39 Hotel Corp.*, No. 14-CV-1847 (JG)(MDG), 2015 WL 5307716, at *5 (E.D.N.Y. Sept. 10, 2015) (denying defendant's motion for summary judgment on individual coverage liability where plaintiff stated that "he had to answer phones, collect payment from guests, and on occasion, place orders for hotel supplies"); *Kim v. Kum Gang, Inc.*, No. 12-CV-6344 (MHD), 2015 WL 2222438, at *22 n. 48 (S.D.N.Y. Mar. 19, 2015) (plaintiffs' testimony that they "were required to process credit-card payments for

guests and apparently did so with some regularity and frequency … was likely sufficient to satisfy the requirement that the employee's involvement in commerce was 'regular or recurring' … and hence sufficient to trigger individual coverage.") (internal citations omitted); *St. Elien v. All Cty. Env't Servs., Inc.*, 991 F.3d 1197, 1199-1200 (11th Cir. 2021) (a jury could conclude that an employee who spoke with out-of-state customers by telephone three to five times a week was "engaged in commerce"); *cf. Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 292 (E.D.N.Y. 2007) (although mailing prepared food out of state was interstate commerce, the record did not establish whether work on those items was a substantial part of plaintiffs' activities, precluding summary judgment for plaintiff); *compare Thompson v. Hyun Suk Park*, No. 18-CV-6 (AMD) (ST), 2019 WL 1299194, at *6 (E.D.N.Y. Mar. 5, 2019), *R&R adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019) (finding no individual coverage where plaintiffs "worked as store attendants" and "performed tasks such as working the cash register, cleaning the store, customer service, and restocking shelves" (internal quotations and alterations omitted)); *Owusu v. Corona Tire Shop, Inc.*, No. 09-CV-3744 (NGG)(JO), 2013 WL 1680861, at *4 (E.D.N.Y. Apr. 17, 2013) (using credit card machine "at most once or twice a day, and sometimes not at all," insufficient to establish individual coverage).

Plaintiff's testimony establishes that he was engaged in commerce, and it was a substantial part of his work. Plaintiff testified that many of Defendants' customers came from outside New York state, including some from Israel, and that out-of-state customers would come into the store "[v]ery often. As much as a few times a week." (Tr. at 30:11-18.) Plaintiff was responsible for wrapping and shipping frames to out-of-state individuals, and was responsible for "bring[ing] the box to the place and they would ship it out either by UPS or [the] United States Parcel Service," which also happened "[v]ery often." (*Id.* at 30:24-31-6.) Plaintiff testified that he was also responsible for processing credit card transactions "whenever the person was paying with a credit card" (*id.* at 12:10-13:1), which occurred "maybe as much as 50 percent of the time" (*id.* at 30:6-7). These regular and recurring daily

and weekly activities were a substantial part of Plaintiff's work. Therefore, the undersigned finds that Plaintiff satisfies the individual coverage test, and Defendants are employers under the FLSA.

### 2. *Whether Plaintiff was an Employee*

An "employee" under the FLSA is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In addition to the allegation in the Amended Complaint that he was an employee (*see* Am. Compl. ¶ 21), Plaintiff provided the Hoffman Letter, stating that "David Jacome is my employee at Hatzulcha Optical on 49 Lee ave [sic] Brooklyn, NY 11211." (Hoffman Letter.) Plaintiff is thus an "employee" under the FLSA.

### 3. *Whether any FLSA Exemption Applies*

Finally, Plaintiff must show that he is not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32. "[T]he FLSA contains a litany of exemptions." *Id.* (internal quotations omitted); *see* 29 U.S.C. § 213. These include "bona fide executive, administrative, or professional" employees, "outside salesmen," certain seasonal employees, some employees in fishing, agriculture, and small local newspaper employees, among many others. *See id.* An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010).

None of the FLSA's exemptions, including the "outside salesman" exemption, apply to Plaintiff, whose work at Defendants' store included helping customers pick out frames, adjusting and fixing frames, and preparing and mailing packages to Defendants' out-of-state customers. (*See* Tr. at 5:6-11, 30:24-31:6.) *Cf. Heras v. Metro. Learning Inst., Inc.*, No. 19-CV-2694 (DLI)(RLM), 2021 WL 66288, at *4 (E.D.N.Y. Jan. 7, 2021) ("An 'outside salesman' is an employee who 'customarily and regularly' works away from the employer's business and whose 'primary job duty' is to make sales or to obtain orders or contracts for services.") (citing *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 228 (2d Cir. 2018)).

Plaintiff has shown that the FLSA applies here.

### D.      Whether the NYLL Applies

To prevail on a NYLL claim, Plaintiff must establish that his employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190. "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status). Because Plaintiff had an employer-employee relationship with Defendants under the FLSA, he also had an employer-employee relationship under the NYLL.

Plaintiff has shown that the NYLL applies.

### E.      Minimum Wage Claims

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; NYLL § 652.

The federal minimum wage has been $7.25 since July 24, 2009. *See* U.S. Dep't of Labor, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009*, https://www.dol.gov/agencies/whd/minimum-wage/history/chart (last visited July 8, 2021).

The New York minimum wage for New York City businesses with ten or fewer employees was $10.50 per hour from December 31, 2016 through December 30, 2017; $12.00 per hour from December 31, 2017 through December 30, 2018; $13.50 per hour from December 31, 2018 through

December 30, 2019; and $15.00 per hour from December 31, 2019 onward.  NYLL § 652(1)(a)(ii).

Plaintiff was paid a flat weekly rate of $200 throughout his employment.  (Jacome Decl. ¶ 7; Tr. at 6:8-9, 9:10-13; Hoffman Letter.)  "For purposes of determining whether Plaintiff [was] paid the prevailing minimum wage, the Court must determine [his] regular hourly rate of pay."  *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303 (DLI)(RER), 2018 WL 9945754, at *4 (E.D.N.Y. Oct. 17, 2018).  Under the FLSA, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109; *see also* 29 C.F.R. § 778.325.  Under the NYLL, the "regular hourly wage rate" for non-hospitality industry employees paid on a weekly basis "shall be determined by dividing the total hours worked during the week into the employee's total earnings."  12 N.Y.C.R.R. § 142-2.16.

Plaintiff calculates his minimum wage at $3.92, based on a weekly salary of $200 divided by fifty-one hours per week.  (Dkt. 17-2, Declaration of Lawrence Spasojevich, Esq. in Support of Plaintiff's Motion for Default Judgment and Damages, "Spasojevich Decl." ¶¶ 19-21.)

Plaintiff testified that he worked from 10:00 am to 6:00 or 6:30 pm Monday through Friday, for 8 to 8.5 hours a day.  (Tr. at 6:20-24.)  The undersigned therefore finds that he worked on average 8.25 hours per weekday.  Plaintiff also testified that he worked from 10:00 am to 1:30 or 2:00 pm on the day he worked each weekend, for 3.5 to 4 hours (*id.* at 10:7-16.); the undersigned finds that he worked on average 3.75 hours each weekend.

Plaintiff testified that he did not work on Christmas, Hannukah, New Year's, or Purim.  (*Id.* at 10:17-11:3.)  Except for Hannukah and Christmas 2019, each holiday fell on a weekday and on a separate week, and therefore Plaintiff worked 8.25 fewer hours during holiday weeks.  The week of December 22, 2019 included both the first day of Hannukah and Christmas, and therefore Plaintiff

worked two fewer weekdays that week.  On all other weeks during Plaintiff's employment, Plaintiff

worked Monday through Friday and one weekend day, for a total of 45 hours per week.

    As shown in the chart below, Plaintiff was always paid less than the federal and state minimum

wage throughout his employment, even on weeks he worked fewer hours because of holidays:

| Time Period | Type of Week | New York Minimum Wage | Weekly Wage | Hours Per Week | Weeks | Regular Hourly Rate of Pay (Weekly Wage / Hours Per Week) |
|---|---|---|---|---|---|---|
| December 24, 2017 – December 30, 2017 | Holiday Week (Four Weekdays) | $10.50 | $200.00 | 36.5 | 1 | $5.48 |
| December 31, 2017 – December 30, 2018 | Regular Week | $12.00 | $200.00 | 45 | 48 | $4.44 |
| | Holiday Week (Four Weekdays) | $12.00 | $200.00 | 36.5 | 4 | $5.48 |
| December 31, 2018 – December 30, 2019 | Regular Week | $13.50 | $200.00 | 45 | 48 | $4.44 |
| | Holiday Week (Four Weekdays) | $13.50 | $200.00 | 36.5 | 3 | $5.48 |
| | Holiday Week (Three Weekdays) | $13.50 | $200.00 | 28.25 | 1 | $7.08 |
| December 31, 2019 – April 9, 2020 | Regular Week | $15.00 | $200.00 | 45 | 13 | $4.44 |
| | Holiday Week (Four Weekdays) | $15.00 | $200.00 | 36.5 | 1 | $5.48 |
| | Last Workweek (Four Weekdays) | $15.00 | $200.00 | 33 | 1 | $6.06 |

    Accordingly, the undersigned finds that Defendants violated the FLSA and NYLL by failing

to pay Plaintiff the minimum wage for the entire period of his employment.

**F.    Overtime Claims**

    Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less

than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."

*Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29

U.S.C. § 207(a)); *see also* NYLL §§ 650 et seq.; 12 N.Y.C.R.R. § 142-2.2).  To support "a reasonable

inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201. *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week without overtime pay established an overtime claim).

Plaintiff worked more than 40 hours per week for 109 weeks of his employment. *See supra.* Plaintiff was entitled to overtime pay during those weeks. Plaintiff alleged that he was not paid at an overtime rate of one-and-a-half his regular rate of pay. (Am. Compl. ¶¶ 14, 24, 29, 31, 59-60; *see also* Jacome Decl. ¶ 8.) Plaintiff supported that contention by alleging that he was paid a flat weekly rate of $200, regardless of hours worked. (Jacome Decl. ¶ 7; Tr. at 9:10-18; Hoffman Letter.)

These allegations establish Defendants' liability for failure to pay Plaintiff overtime under both the FLSA and NYLL. *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established that he worked over 40 hours a week without time-and-a-half compensation, subjecting defendants to liability under FLSA and NYLL).

### G.    Wage Statement and Wage Notice Claims

Plaintiff also alleged violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions. (Am. Compl. ¶¶ 76-83.)

Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule.

Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime

rate of pay, and the number of hours worked.

Plaintiff alleged that he did not receive any wage statements or wage notices.  (Am. Compl. ¶¶ 33, 67-68, 71-72; *see also* Jacome Decl. ¶¶ 9-10; Tr. at 8:15-9:6.)  Taking these facts as true, as required in considering a default judgment motion, the undersigned finds that Defendants have violated NYLL §§ 195(1) and 195(3).

# V.   <u>Damages</u>

## A.   **Minimum Wage Damages**

As explained above, the New York minimum wage was higher than the federal minimum wage for the entire period of Plaintiff's employment.  In light of the principle that "the law providing the greatest recovery will govern," *Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted), Plaintiff is entitled to recovery based on the New York minimum wage.  Plaintiff's minimum wage damages are calculated by taking the difference between Plaintiff's actual hourly wages and the minimum wage, multiplied by the number of hours worked per week.

| Time Period | Type of Week | New York Minimum Wage | Hours Per Week | Number of Weeks | Regular Hourly Rate of Pay | Difference Between Min. Wage & Regular Hourly Wage | Weekly Underpayments (Difference x Number of Hours) | Total Underpayments (Number of Weeks x Weekly Underpayment) |
|---|---|---|---|---|---|---|---|---|
| December 24, 2017 – December 30, 2017 | Holiday Week (Four Weekdays) | $10.50 | 36.5 | 1 | $5.48 | $5.02 | $183.23 | $183.23 |
| December 31, 2017 – December 30, 2018 | Regular Week | $12.00 | 45 | 48 | $4.44 | $7.56 | $340.20 | $16,329.60 |
| | Holiday Week (Four Weekdays) | $12.00 | 36.5 | 4 | $5.48 | $6.52 | $237.98 | $951.92 |
| December 31, 2018 – December 30, 2019 | Regular Week | $13.50 | 45 | 48 | $4.44 | $9.06 | $407.70 | $19,569.60 |
| | Holiday Week (Four Weekdays) | $13.50 | 36.5 | 3 | $5.48 | $8.02 | $292.73 | $878.19 |

| | Holiday Week (Three Weekdays) | $13.50 | 28.25 | 1 | $7.08 | $6.42 | $181.37 | $181.37 |
|---|---|---|---|---|---|---|---|---|
| December 31, 2019 – April 9, 2020 | Regular Week | $15.00 | 45 | 13 | $4.44 | $10.56 | $475.20 | $475.20 |
| | Holiday Week (Four Weekdays) | $15.00 | 36.5 | 1 | $5.48 | $9.52 | $347.48 | $347.48 |
| | Last Workweek (Four Weekdays) | $15.00 | 33 | 1 | $6.06 | $8.94 | $295.02 | $295.02 |
| | | | | | | **Total:** | | $39,211.61 |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$39,211.61** in minimum wage damages.

### B. Overtime Damages

Plaintiff was entitled to overtime for all hours worked over 40 at 1.5 times the minimum wage rate, because the minimum wage was higher than Plaintiff's wage throughout his employment. *See Perez Campos*, 2018 WL 9945754, at *7-8. Plaintiff's overtime damages can therefore be calculated by determining the number of overtime hours each week multiplied by the overtime premium. To avoid double-counting Plaintiff's minimum wage and overtime damages, only the premium over the minimum wage is counted.

| Time Period | Type of Week | Hours Per Week | Number of Weeks | New York Minimum Wage | Overtime Hours per Week | Overtime Premium (0.5 x Minimum Wage) | Weekly Overtime Underpayments (Overtime Premium x Overtime Hours) | Total Overtime Underpayments (Number of Weeks x Weekly Overtime Underpayment) |
|---|---|---|---|---|---|---|---|---|
| December 24, 2017 – December 30, 2017 | Holiday Week (Four Weekdays) | 36.5 | 1 | $10.50 | - | $5.25 | $0.00 | $0.00 |
| December 31, 2017 – December 30, 2018 | Regular Week | 45 | 48 | $12.00 | 5.00 | $6.00 | $30.00 | $1,440.00 |
| | Holiday Week (Four Weekdays) | 36.5 | 4 | $12.00 | - | $6.00 | $0.00 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Regular Week | 45 | 48 | $13.50 | 5.00 | $6.75 | $33.75 | $1,620.00 |
| December 31, 2018 – December 30, 2019 | Holiday Week (Four Weekdays) | 36.5 | 3 | $13.50 | - | $6.75 | $0.00 | $0.00 |
| | Holiday Week (Three Weekdays) | 28.25 | 1 | $13.50 | - | $6.75 | $0.00 | $0.00 |
| | Regular Week | 45 | 13 | $15.00 | 5.00 | $7.50 | $37.50 | $487.50 |
| December 31, 2019 – April 9, 2020 | Holiday Week (Four Weekdays) | 36.5 | 1 | $15.00 | - | $7.50 | $0.00 | $0.00 |
| | Last Workweek (Four Weekdays) | 33 | 1 | $15.00 | - | $7.50 | $0.00 | $0.00 |
| | | | | | | | **Total** | $3,547.50 |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$3,547.50** in unpaid overtime.

### C.        Wage Notice and Wage Statement Damages

Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of $5,000, along with costs and attorney's fees.  NYLL § 198(1-b).  Violations of NYLL § 195(3) carry damages of $250 per workday, for a maximum of $5,000, along with costs and attorney's fees.  NYLL § 198(1-d).

Because Plaintiff never received a wage notice or wage statements from Defendants, and because Plaintiff worked for Defendants for more than 800 days, he is entitled to the maximum damages under both provisions.  *See, e.g., Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR) (JO), 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019) (awarding $5,000 under Section 195(3) because the plaintiff worked without receiving paystubs for more than 20 days).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$5,000** in damages under Section 195(1) and **$5,000** in damages under Section 195(3).

### D.     Liquidated Damages

Under the FLSA and the NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime compensation.  29 U.S.C. § 216(b); NYLL § 198(1-a).  If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages.  29 U.S.C. § 260; *see* NYLL § 198(1-a) (granting same good-faith exception to liquidated damages).  Because Defendants did not respond to the Motion, there is no showing of good faith, and liquidated damages are appropriate.  *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages—that is, liquidated damages under both the NYLL and FLSA.  *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  Plaintiffs may therefore be awarded liquidated damages pursuant to the NYLL or the FLSA and may elect the higher amount.  *See Charvac*, 2015 WL 5475531, at *4.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$42,759.11** in liquidated damages under the NYLL.

### E.     Prejudgment Interest

Plaintiff seeks prejudgment interest under the NYLL.  (Am. Compl. at 11; Pl. Mem. Of Law at 19-20.)  Prejudgment interest is available for underpayments under the NYLL, which in this case includes both minimum wage and overtime claims.  *See* NYLL § 198(1-a).  Prejudgment interest is not available for wage statement or notice violations, or for liquidated damages.  *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).  A plaintiff may, however, seek prejudgment interest on any underpayment and also seek liquidated damages.  *See Reilly v. Natwest Markets Grp. Inc.*,

181 F.3d 253, 265 (2d Cir. 1999) ("Pre-judgment interest and liquidated damages under the Labor Law are not functional equivalents").

In New York, prejudgment interest accrues at the statutory rate of nine percent per year. N.Y. C.P.L.R. § 5004. "Where [] damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F.Supp.3d at 49). Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims. *See, e.g.*, *Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

Plaintiff does not specify a date from which to calculate pre-judgment interest, but requests prejudgment interest "from the median of each relevant period to the date of judgment." (Pl. Mem. Of Law at 20.) Because Plaintiff was never paid the minimum wage or overtime, the mid-point of his employment period will be used. Plaintiff worked for Defendants from December 24, 2017 through April 9, 2020, a total of 838 days. (Am. Compl. ¶ 21; *see also* Jacome Decl. ¶¶ 3-4, 11; Tr. at 4:22-5:3.) The midpoint is therefore February 16, 2019.

Plaintiff's combined minimum wage and overtime damages are $42,759.11. Prejudgment interest on those damages at a rate of nine percent is $3,848.32 per year. That amount divided by 365 days in a year results in daily interest of $10.54. Accordingly, the undersigned respectfully recommends that Plaintiff be awarded prejudgment interest of $10.54 per day from February 16, 2019 through the entry of judgment.

### F.    Post-Judgment Interest

Plaintiff also seeks post-judgment interest (Am. Compl. at 11; Pl. Mem. Of Law at 20-21), which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, e.g., Fermin*, 93 F. Supp. 3d at 53. Accordingly, the undersigned recommends that Plaintiff be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### G.    Fifteen Percent Increase Penalty if Damages not Paid Within Ninety Days

Plaintiff seeks an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days. (Pl. Mem. Of Law at 21.) New York Labor Law provides that "any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent enhancement to damages awarded under the NYLL). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent if Defendants fail to timely satisfy the judgment. If the court adopts the undersigned's recommendation that all damages other than post-judgment interest be awarded under the NYLL, it is further respectfully recommended that

25

Plaintiff be awarded a fifteen percent increase in the amount of damages owed to him for any amounts unpaid after ninety days following the issuance of judgment or the expiration of the time to appeal.

## VI.  <u>Joint and Several Liability</u>

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor." *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to . . . impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).

Here, because Defendants were Plaintiff's joint employers, they are jointly and severally liable for their violations of the FLSA and NYLL.

## VII.  <u>Attorneys' fees and costs</u>

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Plaintiff seeks leave to file a motion for attorneys' fees and costs within 30 days if the Court enters default judgment against Defendants. (Pl. Mem. Of Law at 22-23.) The undersigned respectfully recommends that this request be granted.

## <u>CONCLUSION</u>

Based on the foregoing, the undersigned respectfully recommends that the Motion be granted. Specifically, the undersigned finds that Defendants failed to pay Plaintiff minimum wage, failed to pay him at an overtime time rate for hours worked over forty per week, and failed to provide Plaintiff with pay stubs or wage notices. The undersigned respectfully recommends that damages be awarded as follows:

- $39,211.61 for minimum wage underpayment

- $3,547.50 for unpaid overtime

- $5,000 for failure to provide wage notices

- $5,000 for failure to provide wage statements

- $42,759.11 for liquidated damages

The undersigned further respectfully recommends that prejudgment interest be awarded at the rate of $10.54 per day from February 16, 2019 until the date of judgment, post-judgment interest thereafter at the statutory rate, and the fifteen-percent increase penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal. The undersigned also respectfully recommends that Plaintiff be granted leave to file a motion for attorneys' fees and costs.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
_____

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
             July 9, 2021

27